STATE OF WEST VIRGINIA

SUPREME COURT OF APPEALS

FILED
January 20, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**BRANDY L. ADDISON,**
**Claimant Below, Petitioner**

**vs.)    No. 13-1023** (BOR Appeal No. 2048273)
                    (Claim No. 2010115681)

**BECKLEY ONCOLOGY ASSOCIATES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Brandy L. Addison, by John H. Shumate Jr., her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Beckley Oncology Associates, Inc., by James Heslep and Gary Nickerson, its attorneys, filed a timely response.

This appeal arises from the Board of Review's Final Order dated September 10, 2013, in which the Board affirmed a March 25, 2013, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's April 6, 2012, decision, which denied a request to add displacement of intervertebral disc site unspecified, displacement of cervical intervertebral disc without myelopathy, and cervical spinal stenosis as compensable components of the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Addison, a registration clerk, was injured in the course of her employment while she was trying to move a desk on November 23, 2009. Her claim was held compensable for sprain/strain of the rotator cuff, neck, and thoracic regions. An MRI taken shortly after the injury showed a diffuse mild disc bulge at C5-6 and C6-7. An EMG of both upper extremities was within normal limits except for mild carpal tunnel syndrome.

1

Ms. Addison underwent an independent medical evaluation by Prasadarao Mukkamala, M.D., on May 9, 2011. In that evaluation, she reported right shoulder pain as well as numbness and tingling in her right hand. She also complained of right elbow and neck pain. Dr. Mukkamala found that Ms. Addison had reached maximum medical improvement for her compensable conditions and was capable of returning to work. Dr. Mukkamala performed a second independent medical evaluation on July 20, 2011. He again found that Ms. Addison had reached maximum medical improvement. On September 6, 2011, Rebecca Thaxton, M.D., performed a physician review. She recommended denying the addition of degeneration of cervical intervertebral disc to the claim. She noted that degenerative diseases are progressive in nature and the requested diagnosis would not have been caused by Ms. Addison's lifting injury. Richard Vaglienti, M.D., disagreed and opined in his August 25, 2011, attending physician's report that Ms. Addison was temporarily and totally disabled from June 14, 2011, through December 31, 2011, due to the compensable injury. He attached a diagnosis update to the report that requested the addition of degeneration of cervical intervertebral disc to the claim.

On October 21, 2011, the StreetSelect Grievance Board found that degeneration of cervical intervertebral disc should not be added to the claim. The Board determined that Ms. Addison was diagnosed with degenerative disease of the cervical spine that was still progressing. She was found to be at maximum medical improvement for her compensable injury and no additional treatment was recommended. Because a degenerative disease is not caused by a sprain/strain and is progressive in nature, the Board found the condition was unrelated to the compensable injury. On April 6, 2012, the StreetSelect Grievance Board determined that the claim is allowed for sprain/strain of the cervical and thoracic spine and rotator cuff. MRIs show a progression of degenerative changes but no evidence of disc herniation or radiculopathy. The worsening symptoms are the result of the natural progression of pre-existing degenerative disease as seen by MRI findings and the fact that stenosis, a degenerative condition, is one of the requested conditions. It therefore recommended that the request to add displacement of intervertebral disc site unspecified, displacement of cervical intervertebral disc without myelopathy, and cervical spinal stenosis to the claim be denied.

The claims administrator denied the request to add displacement of intervertebral disc site unspecified, displacement of cervical intervertebral disc without myelopathy, and cervical spinal stenosis as compensable components of the claim on April 6, 2012. The Office of Judges affirmed the decision in its March 25, 2013, Order. The Office of Judges found that the allowed diagnoses in the claim are sprain/strain of the neck, rotator cuff, and thoracic spine. Ms. Addison was found to be at maximum medical improvement on May 9, 2011, by Dr. Mukkamala. On December 5, 2011, Dr. Vaglienti requested the addition of the requested diagnoses stating that diagnostic testing shows a worsening of symptoms since the primary injury. The Office of Judges determined that Dr. Vaglienti requested the addition of degeneration of cervical intervertebral disc to the claim on August 25, 2011. The claims administrator denied the request and the decision was subsequently affirmed by both the Office of Judges and the Board of Review. The Office of Judges noted that Ms. Addison has been found to be at maximum medical improvement by three separate claims administrator's decisions, which were also affirmed by the Office of Judges and the Board of Review.

The Office of Judges found that Ms. Addison has undergone three cervical MRIs. The first MRI, taken on December 11, 2009, showed a diffuse mild disc bulge at C5-6 and C6-7. The second MRI taken on October 7, 2010, is not of record, but is referred to in the medical reports of record. In an addendum report of October 29, 2010, the radiologist compared the two MRIs and stated that there was a slight progression of the disc protrusion at C5-6. The most recent MRI, taken on May 21, 2011, shows a mild posterior protrusion of the C6-7 intervertebral disc, possibly in combination with small marginal osteophytes resulting in mild spinal stenosis; encroachment on the bilateral C6-7 lateral recess, right greater than left; and possible nerve root impingement. It also indicated a mild posterior bulging at the C5-6 intervertebral disc resulting in effacement of the cervical thecal sac.

The Office of Judges determined, relying upon Dr. Thaxton's physician review, that Ms. Addison did not have an acute herniated disc causing cervical radiculopathy with the subject injury. The initial MRI merely showed a bulge. Further, an EMG of the upper extremities was within normal limits except for mild carpal tunnel syndrome. The Office of Judges therefore concluded that although the MRIs show a progression, it is more likely than not that it is a progression of pre-existing degenerative disc disease rather than the compensable soft tissue injury. Also, as the Grievance Board noted, spinal stenosis is a degenerative condition and per West Virginia Code of State Rules § 85-20-37.8 (2006), degenerative conditions may be associated with a higher incidence of persistent symptoms but are not compensable conditions.

In a September 10, 2013, Order, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its decision. On appeal, Ms. Addison argues that her treating physician, Dr. Vaglienti, found that the requested diagnoses are the result of her work-related injury. She also asserts that the Office of Judges failed to consider his medical records and diagnosis update request. Further, Ms. Addison maintains that the opinions of Dr. Thaxton and Dr. Mukkamala are less reliable than that of Dr. Vaglienti because Dr. Vaglienti is the treating physician and therefore in a better position to assess her injuries. Beckley Oncology Associates, Inc., asserts that there is no reliable medical evidence in the record to causally link Ms. Addison's alleged cervical disc conditions to her compensable injury and that there is no objective evidence of a disc herniation.

Upon Review, this Court agrees with the reasoning of the Office of Judges and the conclusions of the Board of Review. The evidentiary record indicates that Ms. Addison sustained sprains/strains of the rotator cuff, neck, and thoracic spine as a result of her compensable injury. The requested diagnoses are the result of pre-existing, non-compensable degenerative conditions and therefore cannot be added as compensable components of the claim.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:   January 20, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II